IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Alonzo E. Corley, III, ) | |
| ) | Civil Action No. 9:12-2676-TMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Alonzo E. Corley, III, ("Corley") brought this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under the Social Security Act ("SSA"). This matter is before the court for review of the Report and Recommendation ("Report") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of social security cases in this district. (ECF No. 22).[2] The Report recommends affirming the decision of the Commissioner to deny benefits. The court adopts the Report and affirms the denial of disability insurance benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## I. Background

Corley filed an application for disability insurance benefits on May 15, 2009, alleging that he became unable to work on April 16, 2007. His application was denied initially and on reconsideration by the Social Security Administration. He requested a review by an administrative law judge ("ALJ"), and an ALJ conducted hearings on August 1, 2011, and September 14, 2011. On September 22, 2011, the ALJ issued a decision, finding that Corley was not disabled as defined in the SSA.

The ALJ found that Corley suffered from severe impairments of back pain with radiation to the lower extremities, bilateral shoulder pain, depression, and post-traumatic stress disorder ("PTSD"). The ALJ went on to find that Corley's impairments did not meet or medically equal the criteria for any of the listed impairments. Accordingly, the ALJ proceeded to assess Corley's residual functional capacity ("RFC"), finding that Corley could perform a reduced range of light work. The ALJ concluded that Corley could not perform his past relevant work, but that he could perform other jobs in existence in the national economy in significant numbers and, therefore, denied his claim.

On July 17, 2012, the Appeals Council initially declined to review the ALJ's decision, and again declined review on October 4, 2012, after considering additional information. Corley then filed this action for judicial review. The magistrate judge filed his report on October 16, 2013. (ECF No. 22). On November 4, 2013, Corley filed objections to the Report (ECF No. 23), and on November 21, 2013, the Commissioner filed a reply to those objections (ECF No. 25). On December 6, 2013, Corley also filed a response to the Commissioner's Reply. (ECF No. 29). This matter is now ripe for review.

## II. Standard of Review

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## III. Analysis

Corley raises five issues in his brief. He alleges the ALJ erred by: 1) not properly evaluating Corley's credibility, especially his allegations of pain; 2) failing to give proper weight

to the opinions of the treating physicians, the examining consultative physician, and the examining vocational experts; 3) failing to include all well-established limitations in his questions to the vocational expert; 4) failing to properly consider the effect of the combination of Plaintiffs impairments; and 5) failing to recuse himself.  (ECF No. 15 at 3-4).

In his objections, Corley first contends that the magistrate judge never addressed whether the ALJ erred in failing to recuse himself.  Reviewing the Report, it appears that the magistrate judge overlooked this argument.

At the first hearing before the ALJ, the ALJ stopped the hearing because Corley's counsel had not provided citations to specific pages of the exhibits she referenced in her pre-trial brief, which had been submitted the morning of the hearing. (R. 87).  The ALJ stated he would continue the hearing until counsel submitted the brief with the page citations.  (*Id.*)  He apologized to Corley. (*Id.*)  Counsel asked the ALJ if he also wanted to continue the next hearing in which she represented another claimant because her pretrial brief in that case also lacked citations to exhibit page numbers.  (R. 87).   The ALJ replied,"No."  (R. 88).  Thus, the ALJ continued Corely's hearing, but proceeded with the hearing in other case.

Corley contends that "[t]he ALJ's behavior and statements during the verbal exchange - or a at least [his] perception of them - coupled with the ALJ's contradictory decisions regarding whether to proceed with the two cases, caused [him] to be so upset that [he] was emotionally unable to attend the rescheduled hearing and to perceive that he was not being treated the same as other claimants."  (Objections at 2).

At the beginning of the second hearing on September 14, 2011, the ALJ noted that Corley had signed a waiver of right to personally  appear.  (R. 48).  The ALJ then noted that the first hearing had been continued to allow counsel to revise the pretrial brief to include page

4

citations. However, after not receiving the pretrial brief by the day before the second hearing, the ALJ called and spoke with counsel. (R. 49-50). Counsel indicated at that time that she had decided not to file any pretrial brief, as a pretrial brief is not required by any regulation. (R. 49-50). The ALJ agreed that a pretrial brief is not required, but he noted that a pretrial brief was a great benefit for the claimant. (R. 50). Further, he also expressed that he thought counsel had agreed to make the corrections and file a pretrial brief in this case, and that she was reneging on their agreement. (R. 51-52). The ALJ stated that he knew counsel believed that he was being rude to her, and noted that she had moved for him to recuse himself. (R. 51). He denied her motion to recuse himself and noted that he had no bias against Corley or her counsel. *Id.* Counsel then stated that she had received the recording of the first hearing and "it appears some of the material has been deleted from it." (R. 52). The ALJ responded that he did not know if that was even possible with the recording system. (R. 53). The second hearing then continued without Corley present.

Corley contends "[r]egardless of whether the [ALJ's] actions and/or Corley's perceptions were correct, [he] has never had his day in court." (Objections at 2). The court notes that in his brief, Corley states that even if the ALJ did not have an outright conflict or bias, his actions gave Corley the perception that he did. (ECF No. 15 at 24). In his affidavit, Corley states that the ALJ bullied him and his counsel, and yelled at them to "get out, that he was continuing the case." (R. 184). He contends that in his fragile emotional state, he could not force himself to appear in front of the ALJ at a second hearing. *Id*.

Reviewing the record, the court finds that the ALJ did not err in denying Corley's motion to recuse himself. Pursuant to 20 C.F.R. § 416.1440, ALJs are not to conduct a hearing if he "is prejudiced or partial with respect to any party or has any interest in the matter pending for

5

decision." 20 C.F.R. § 416.1440. ALJs are presumed to be unbiased and the burden is on Corley to rebut this presumption. *Schrader v. Astrue*, C/A No. 3:12-cv-54, 2013 WL 1192315, *4 (N.D. W.Va. March 22, 2013). "'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display,' and are generally insufficient to support a recusal motion." *Belue v. Leventhal*, 640 F.3d 567, 573-74 (4th Cir. 2011) (citing *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)). "'A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune.'" *Id.* "[C]ourts have generally declined to grant recusal motions based on in-trial 'predispositions' - especially when they involve alleged bias or prejudice against the attorneys rather than the parties." *Id.* At 574. Here, Corley has not shown any evidence that the ALJ was prejudiced or actually biased against Corley or his counsel. Accordingly, the court finds this objection is without merit.

Next, Corley contends that the magistrate judge erred in relying on *Robinson v. Sullivan*, 956 F.2d 836 (8th Cir. 1992), for the proposition that conservative treatment is not consistent with allegations of disability. (Objections at 3). Corley factually distinguishes *Robinson* from the facts of his case and argues that he has undergone more than conservative treatment. Corley contends he has undergone shoulder surgery, epidural steroid injections, nerve root blocks, radio frequency ablations, and physical therapy. (*Id.*) Reviewing the ALJ's decision, it is important to note that the ALJ did not classify Corley's treatment as conservative. The ALJ noted that, while Corley had a significant injury to his left shoulder, he had recovered well, and that the diagnostic studies in regard to his lumbar spine have shown no more than mild findings and further Corley has never shown a basis for surgery. (R. 35).

An ALJ may properly discount a claimant's allegation that she is disabled where "the level . . . of treatment is inconsistent with the level of complaints." SSR 96-7p, at * 7. *See also Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir.1994) (Luttig, J., concurring) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the . . . credibility" of complainant's allegation that she is disabled). While Corley may disagree with the magistrate judge's characterization of his treatment as conservative, the ALJ did not make this same characterization. Thus, the court finds this objection is without merit.

Corley next contends that the magistrate judge erred in failing to find the ALJ's failure to utilize the required seven factors in reaching a credibility determination. (Objections at 4). The court notes that Corley did not raise this specific issue to the magistrate judge. Although Corley does not cite to any authority, presumably, Corley is referring to the factors set forth in 20 C.F.R. § 404.1529(c). However, an ALJ is not required to discuss each factor enumerated in 20 C.F.R. § 404.1529(c). "Rather the decision must contain 'specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Clore v. Colvin*, C/A No. 2:13-cv-0023-FDW, 2014 WL 294640, * 6 (W.D.N.C. Jan. 27, 2014) (citing SSR 97-7p).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility, and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shivley v. Heckler*, 739 F.2d 987, 989-90 (4th Cir.1984). In considering the record, the court agrees with the magistrate judge's overall finding that there is substantial evidence to support the ALJ's determination that Corley's testimony regarding the intensity,

persistence, and limiting effects of his symptoms was not credible, to the extent that it was inconsistent with his residual functional capacity assessment. Accordingly, this objection is without merit.

Additionally, Corley contends that neither the magistrate judge or ALJ addressed whether Corley's long and steady work history was considered in assessing credibility or whether Corley's longitudinal medical record was considered. (Objections at 5). Social Security Ruling ("SSR") 96-7p states "the medical evidence, especially a longitudinal medical record, can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *6. "In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." *Id.* at 7. Furthermore, while a plaintiff's work history may be a factor supporting credibility, it is not dispositive. *See* SSR 96-7p (finding that a credibility assessment "must be based on consideration of all the evidence in the case record," which "includes, but is not limited to" a claimant's "prior work record and efforts to work").

When considering whether an ALJ's credibility determinations are supported by substantial evidence, the court does not simply replace its own credibility assessments for those of the ALJ. Rather, the court must scrutinize the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ had the "opportunity to observe the demeanor and to

8

determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir.1984) (citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va. 1976)).

Corley's work history does not automatically entitle his subjective complaints to substantial credibility. *See Jeffries v. Astrue*, 2012 WL 314156, at *25 (S.D.W.Va. Feb. 1, 2012) (noting that the plaintiff relied on cases from outside the Fourth Circuit to support his argument that he was entitled to substantial credibility because of his work history and further noting that the "requirement that the ALJ make a credibility determination based on these factors would be meaningless if a long work history standing alone established 'substantial credibility'"). Moreover, although the ALJ did not use the phrase "longitudinal medical record," the ALJ's analysis complied with SSR-97p and the ALJ reviewed the entire medical record when evaluating the credibility of Corley's testimony about the intensity, persistence and limiting effects of his symptoms. Because the ALJ adequately supported his credibility determination with evidence from Corley's own statements, as well as objective findings from the record, the court finds that substantial evidence exists to support the ALJ's credibility determination.[3] Accordingly, this objection is without merit.

Corley then contends that the magistrate judge failed to address whether the ALJ considered the fact that he was found to be disabled by the South Carolina Retirement System and the Worker's Compensation Commission.  (Objections at 6).  While the magistrate judge may not have addressed this specific claim in assessing credibility, the ALJ specifically addressed the finding of disability made by the South Carolina Retirement Systems.  (R. 35-36).

---

[3]Corley also contends that, in reviewing the ALJ's credibility determination, the magistrate judge erroneously states that there was "little evidence" of muscle atrophy. (Objections at 4).  The record contains evidence that Corley did have muscle atrophy. (R. 415, 613).  However, even assuming the magistrate judge mischaracterized this evidence of muscle atrophy as "little evidence," the ALJ did not.

9

The ALJ concluded that this determination went to whether Corley could perform his past work as a correctional officer, and not to his capacity for other work. (R. 36).

The Fourth Circuit has held that "weight should be given to the findings of the [Workers' Compensation] Commission even though same is not determinative of the issue." *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). *See* 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). The ALJ adequately addressed the South Carolina Retirement Systems's determination that Corley was disabled and explained that the determination only went to Corley's prior work as a correctional officer. Accordingly, this objection is also without merit.

Finally, Corley contends that the magistrate judge erred in finding that the ALJ properly included all well-supported limitations in the residual functional capacity ("RFC") in his questions to the vocational expert ("VE"). (Objections at 6). Specifically, Corley contends that the ALJ failed to offer any explanation as to how Corley could stand and/or walk for up to six hours a day with his lower back pain. *Id.* Further, Corley contends that the ALJ's hypothetical questions to the VE did not include Corley's chronic and severe pain.

Performing light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Further, light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*[4] In his hypothetical to the VE, the

---

[4] As Corley points out, the magistrate judge in defining light work did not include that light work which entails sitting most of the time also requires pushing and pulling of leg or arm controls.

10

ALJ included that there was to be no standing and or walking over six hours in an eight hour day. (R. 57).

The ALJ adopted Dr. Carters's opinion that Corley could perform full light work. (R. 36). The ALJ specifically noted that "[t]he clinical and diagnostic findings do not support the severity of [Corley's] allegations, as Dr. Carter stated in his first examination of the claimant." (R. 35). An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)(unpublished opinion). Alleged impairments that are adequately controlled, deemed incredible, or not supported by substantial evidence, need not be included in the hypothetical question to the VE. *See McMillian v. Astrue*, 2011 U.S. Dist. LEXIS 89497 at *10, 2011 WL 3565118 (D.Md. Aug. 11, 2011) ("The [hypothetical] question . . . need include only those limitations that the ALJ deems credible."). The Fourth Circuit has made clear that "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364-65 (4th Cir. 2006).

Here, the hypothetical question posed to the VE properly represented Plaintiff's abilities and limitations found in the RFC. Furthermore, there is substantial evidence to support the ALJ's RFC determination. While Corley may disagree with the RFC determination of the ALJ, the court concludes that the ALJ's RFC findings are supported by substantial evidence, and thus the hypothetical given by the ALJ to the VE was proper. Accordingly, this objection is without merit.

### IV. Conclusion

Therefore, after a thorough review of the record, the court adopts the Report and the Commissioner's decision is **AFFIRMED**.

    **IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

February 18, 2014
Anderson, South Carolina